**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wayne F. Foraker,<br><br>        Plaintiff,<br><br>vs.<br><br>Apollo Group, Inc. Dba University of Phoenix,<br><br>        Defendant. | No. CV- 04-2614-PHX-DGC<br><br>**ORDER** |

Pending before the Court are Defendant's motions for summary judgment and motions to strike. Docs. ##62, 117, 121, 138. For the reasons set forth below, the motions for summary judgment will be granted in part and denied in part.[1]

**Background**

Plaintiff has worked for Defendant since 1995 and currently holds the position of Senior Director. In 2001, Plaintiff was promoted from the position of Director to Senior Director of Assessment and Analysis in Defendant's Institutional Research & Effectiveness ("IRE") department. A Senior Director is classified as a job position grade seven. In May

---

[1] The Court will deny the request for oral argument because the parties have submitted memoranda thoroughly discussing the law and evidence and the Court concludes that oral argument will not aid its decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

2003, Plaintiff requested and was granted a transfer from the IRE department to the School of Advanced Studies ("SAS") department based on Plaintiff's unconfirmed complaints of sexual-orientation and religious discrimination. Plaintiff retained the grade, title, and salary of a Senior Director in the SAS department.

In December 2003, one of the SAS department deans resigned. Instead of replacing her, Dr. Pepicello, Executive Dean of the SAS deportment, reassigned her duties to other employees. As part of this reorganization, Plaintiff was promoted in February of 2004 to the position of Senior Director of Learning Assessment and Analysis, and acquired responsibility for the Comprehensive Outcomes of Cognitive Assessment ("COCA") program. Doc. #101, Exh. C. Plaintiff claims that he was promised a ten percent pay increase with these new responsibilities. Doc. #63, Attach. 2 at 19. Defendant has no documentation supporting Plaintiff's claim that such a promise was made. Doc. #62, Exh. 2. at 205.

From March 2, 2004 to May 25, 2004, Plaintiff was on medical leave pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. On March 18, 2004, Plaintiff filed his first EEOC charge against Defendant, asserting claims of discrimination based on his sexual orientation and religion.[2] Doc. #62. While Plaintiff was on leave, Dr. Pepicello restructured matters a second time, eliminating Plaintiff's responsibilities for Learning Assessment and transferring the COCA program from Plaintiff to the Director of Learning Assessment, a grade six position. Thus, when Plaintiff returned from leave on May 25, 2004, he had lost his promotion as director over the Learning Assessment program, including management of the COCA program and the alleged ten percent raise, but retained his title of Senior Director, his pay grade of seven, and his salary. Doc. # 101, PSOF ¶77-78. Plaintiff asserts that the loss of his supervisory authority over the Learning Assessment program and his ten percent raise were in retaliation for his EEOC complaint and FMLA leave.

---

[2] The EEOC dismissed Plaintiff's allegations of discrimination and hostile work environment, as well as his request for reconsideration. Doc. # 62, Attach. 20, 21. Plaintiff currently asserts only a claim of retaliation under Title VII.

- 2 -

1          On November 3, 2004, Plaintiff filed a complaint in Maricopa County Superior Court
2   asserting that Defendant violated the FMLA when it failed to restore him to the same or a
3   comparable position upon his return from medical leave. Doc. #127, Count 1.  Plaintiff also
4   alleged that the loss of his salary increase and supervisory authority, along with Defendant's
5   refusal to interview him for the Director of Learning Assessment position, the SAS
6   department's refusal to award him the same bonus he previously received in the IRE
7   department, the revocation of his company cell phone and newspaper subscription, and the
8   issuance of low performance evaluations, were evidence of Defendant's retaliation for his
9   FMLA leave and EEOC complaint. *Id.*

10          On September 22, 2005, Plaintiff filed a fourth amended complaint alleging that
11  Defendant illegally retaliated against him by placing him on indefinite paid leave in response
12  to his August 3, 2005 request for another FMLA leave. Doc. #132. Plaintiff's FMLA leave
13  was approved to begin on September 20, 2005. *Id.* Prior to his leave, Plaintiff scheduled
14  several pre-operative appointments during work hours, opting to use accrued sick time
15  instead FMLA leave time. Doc. #122. Defendant expressed concern "about Plaintiff's
16  escalating absenteeism" and suggested that he consider taking part-time FMLA leave to
17  accommodate his medical appointments. *Id.* Plaintiff claims that Defendant's request was
18  retaliatory because other co-workers are permitted to attend medical appointments during
19  working hours without the requirement of FMLA leave. Doc. #133.  On September 16,
20  2005, Defendant placed Plaintiff on paid administrative leave after it received several
21  complaints from employees that Plaintiff's behavior made them feel "uncomfortable, fearful,
22  intimidated, or nervous," such that it was "difficult for them to perform their job function."
23  Doc. #122. Plaintiff denies he acted inappropriately and claims that his suspension was in
24  retaliation for his FMLA leave.

25          Defendant denies that the reorganization of the SAS department violated Plaintiff's
26  rights under the FMLA, or that it improperly retaliated against Plaintiff for exercising his
27  rights under FMLA or Title VII. Doc. #62. Defendant moves for summary judgment on
28  Plaintiff's third and fourth amended complaint. *Id.*; Doc. #130.

**Legal Standard.**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2005); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The initial burden is on the moving party to show an absence of genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 325. Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger*, 24 F.3d at 1130. Similarly, to preclude summary judgment the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**Analysis**

**I. FMLA Claim.**

The FMLA creates two related substantive rights for employees. First, an employee has the right to take a leave of absence from work for personal medical reasons, to care for a newborn baby, or to care for family members with serious illnesses. 29 U.S.C. § 2612. Second, an employee who takes FMLA leave has the right to return to his or her original position or to a position equivalent in benefits, pay, and conditions of employment. 29 U.S.C. § 2614. An equivalent position must have substantially similar duties, conditions, responsibilities, privileges, and status as the employee's original position. 29 C.F.R. § 825.215(e). The FMLA does not, however, extend to de minimis or intangible aspects of the job. 29 C.F.R. § 825.215(f). Moreover, the FMLA does not entitle the employee to any rights, benefits, or positions he would not have been entitled to had he not taken leave. 29 U.S.C. § 2614(a)(3)(B). The act simply guarantees that an employee's taking of leave will not result in loss of job security or other adverse employment actions.

1    The FMLA states that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided." 29 U.S.C. § 2615(a)(1). The Ninth Circuit has held that adverse employment actions taken against employees for exercising rights under FMLA should not be construed as retaliation or discrimination, but rather as interference with rights guaranteed by the statute. *See Bachelder v. America West Airlines,* 259 F.3d 1112, 1124 (9th Cir. 2001) (holding that to prevail on a claim under § 2615(a)(1), a plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her"); *Conoshenti v. Public Serv. Elec. & Gas Co.,* 364 F.3d 135, 146-47 (3rd Cir. 2004) (applying the *Bachelder* approach).

The appropriate legal framework for analyzing Plaintiff's claims, therefore, is not the *McDonnell Douglas* burden-shifting framework for employment discrimination and retaliation claims, but a simpler standard derived from the applicable statute and regulation. *Bachelder,* 259 F.3d. at 1124-25 (construing § 2615(a)(1) and its implementing regulation). Plaintiff need only establish by a preponderance of the evidence that (1) he took FMLA-protected leave, (2) he suffered an adverse employment action, and (3) the adverse action was causally related to his FMLA leave. *See Conoshenti,* 364 F.3d at 146-47. Both parties agree that Plaintiff engaged in protected activity by taking FMLA leave. Defendant denies, however, that Plaintiff suffered an adverse employment action and that the action was causally related to his FMLA leave. Docs. ##62, 116, 137.

Plaintiff asserts that prior to his March 2, 2004 medical leave he had managerial and supervisory duties that included "budget development and management; cost center management; employee supervision; hiring authority; vendor relations and negotiations; contracting with consultants; and [participation in] strategic planning meetings." Doc. #100 at 6. Upon his return from leave on May 25, 2004, Plaintiff claims that he was not reinstated to an equivalent position because he was stripped of all authority, had "no job responsibilities," lost his promised ten percent salary increase, and lost his title as Senior Director of Learning Assessment. *Id.*

1   Defendant argues that no FMLA violation occurred because Plaintiff retained the
2 position of Senior Director, his pay grade level of seven, his salary of $81,173, and the same
3 benefits. Doc. #116. Defendant asserts that its decision to move the supervision of the
4 COCA program to the Director of Learning Assessment, a grade six position, was in the best
5 interest of the University and would have occurred regardless of whether Plaintiff was on
6 medical leave. Doc. #116.

**A.  Adverse Employment Action.**

8   In his response to Defendant's summary judgment motion, Plaintiff lists, without
9 citing legal authority, seven instances of alleged adverse employment actions taken in
10 retaliation for his FMLA leave: (1) loss of the title of Senior Director of Learning
11 Assessment and the responsibility and raise associated with the promotion, (2) the SAS
12 department's refusal to match the bonus Plaintiff historically received from the IRE
13 department, (3) revocation of his company cell phone and newspaper subscription, (4) failure
14 to interview him for the position of Director of Learning Assessment, (5) low performance
15 evaluations, (6) placement on indefinite paid leave, and (7) failure to advise him of meetings.
16 Docs. ##127, 132, 137.

17  The Ninth Circuit has held that "not every employment decision amounts to an
18 adverse employment action," explaining that "only non-trivial employment actions that
19 would deter reasonable employees from complaining about Title VII violations" are
20 actionable. *Brooks v. City of San Mateo,* 229 F.3d 917, 1092 (9th Cir. 2000); *Vasquez v.*
21 *County of Los Angeles,* 349 F.3d 634, 651 (9th Cir. 2003). Termination, negative
22 employment references, undeserved negative performance reviews, and denial of promotions
23 qualify as adverse employment actions. *See Brooks*, 214 F.3d at 1093; *but see Kortan v.*
24 *California Youth Authority,* 217 F.3d 1104, 1112-13 (9th Cir. 2000) (holding that mediocre
25 performance evaluations – "rather than sub-average" – that did not give rise to any further
26 negative employment action did not constitute adverse actions); *Lyons v. England* , 307 F.3d
27 1092, 1118 (9th Cir. 2002) (average or mediocre performance ratings failed to make out a
28 prima facie case for retaliation). In contrast, "mere inconveniences or an alteration of job

- 6 -

1 responsibilities do not qualify." *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10 Cir. 1998); *Kortan v. State of Cal.,* 5 F.Supp.2d 843, 853 (C.D.Cal 1998) (neither verbal disparagement, low performance rating, denial of request for change of supervisor, nor denial of transfer amount to an adverse action.)  Likewise, paid administrative leave does not constitute an adverse employment action. *See Green v. Safeway Stores, Inc.,* 1998 WL 898366 (N.D.Cal.1998); *Sharp v. American Telephone & Telegraph Co.,* 2000 WL 970665 (N.D. Cal. 2000) (held no adverse action when Plaintiff placed on leave with full pay because no evidence of any loss in wages or benefits).

Construing the facts in Plaintiff's favor, as the Court must do at this summary judgment stage, Defendant's reorganization constitutes a possible adverse employment action because it involved a "material adverse change in the terms and conditions of [Plaintiff's] employment," allegedly stripping him of job responsibilities, revoking his title, and denying his promised salary increase. *See Torres v. Pisano*, 116 F.3d 623, 640 (2nd Cir. 1997) (an adverse employment action involves a "materially adverse change in the terms and conditions of employment") (citation omitted)); *St. John v. Employment Development Dept.*, 642 F.2d 273, 274 (9th Cir 1981) (a transfer to another job of the same pay and status may constitute an adverse employment action.). Plaintiff's sub-average "needs improvement" performance evaluation also qualifies as a possible adverse employment action. *See Brooks*, 214 F.3d at 1093.

The rest of the alleged actions, taken individually or together, do not rise to the level of an adverse employment action. In the absence of some evidence that company policy required a particular bonus, the refusal of one department to match a different department's bonus does not constitute an adverse employment action. Likewise, loss of a company cell phone and newspaper subscription, failure to interview, failure to advise of meetings, and placement on paid administrative leave (asserted in Plaintiff's Fourth Amended Complaint) do not constitute adverse employment actions. *Sanchez*, 164 F.3d at 532; *Kortan,* 5 F.Supp.2d at 853; *Green,* 1998 WL 898366; *Sharp,* 2000 WL 970665. The Court will grant summary judgment on these claims.

**B. Causation.**

To survive summary judgment, Plaintiff bears the initial burden of establishing a prima facie case by a preponderance of the evidence. *See Conoshenti,* 364 F.3d at146-47. To prove causation, Plaintiff must show that the alleged adverse employment actions were causally related to his FMLA leave. *Id.* Plaintiff presents no direct evidence of causation, but argues that the temporal proximity between his FMLA leave and the adverse employment actions satisfies the causation element. Doc. #100.

In *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001), the Supreme Court stated that temporal proximity between the defendant's knowledge of the protected activity and an adverse employment action can constitute sufficient evidence of causality to establish a prima facie case, but only if the temporal proximity is "very close." The Supreme Court upheld the district court's grant of summary judgment for the defendant because the 20-month period between the defendant's knowledge of the protected activity and the adverse employment actions "suggested by itself, no causality at all." *Id.* at 274.

In this case, Plaintiff's sub-standard "needs improvement" performance evaluation was issued on September 8, 2005, approximately six months after Plaintiff took FMLA leave on March 2, 2004. The Court finds that the time lapse between Defendant's knowledge of the protected activity and the decision to issue a sub-standard performance evaluation is too long, standing alone, to establish a prima facie case of retaliation. *Compare Breeden,* 532 U.S. at 273-74 (20-month lapse, by itself, suggests no causality); *Villiarimo*, 281 F.3d at 1065 (18-month lapse too long to give rise to an inference of causation) *with Stegall v. Citadel Broad. Co.,* 350 F.3d 1061, 1069 (9th Cir. 2004) (four days sufficient to infer causation). The Court will grant summary judgment on this claim.

In contrast, Plaintiff's loss of title, job responsibilities, and raise associated with his promotion to Senior Director of Learning Assessment occurred two months after Plaintiff took FMLA leave and while he was still on leave. Doc. #62; Exh 35 (*See* May 4, 2002 email

1 from Pepicello discussing proposed reorganization).[3] This is sufficiently close to raise a
2 question of fact concerning causation. *See Passantino v. Johnson & Johnson Consumer*
3 *Prods., Inc.,* 202 F.3d 493, 507 (9th Cir. 2000) ("[W]e have held that evidence based on
4 timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons
5 proffered by the defendant."); *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731-32 (9th Cir.
6 1986) (sufficient evidence of causation existed where adverse employment action occurred
7 less than two months after protected activity). For this reason, Plaintiff's FMLA claim
8 involving the revocation of his job title, job responsibilities, and raise will survive summary
9 judgment.

## II.  Title VII Retaliation Claim.

11 Plaintiff also claims that Defendant retaliated against him because he filed an EEOC
12 complaint on March 18, 2004, asserting sexual-orientation and religious discrimination. To
13 survive summary judgment, Plaintiff must show that (1) he engaged in or was engaging in
14 an activity protected by Title VII, (2) the employer subjected him to an adverse employment
15 action, and (3) there was a causal link between the protected activity and the adverse action.
16 *See Vasquez v. County of L.A.*, 349 F.3d 634, 642 (9th Cir. 2004); *Lyons v. England*, 307
17 F.3d 1092, 1118 (9th Cir. 2002).

18 Plaintiff asserts that he engaged in protected activity when he filed his EEOC
19 complaint, endured adverse employment actions as stated in his FMLA claim, and satisfies
20 the causation requirement by showing a close temporal proximity between the EEOC
21 complaint and the adverse employment actions. Defendant argues that the causation element

---

[3] Defendant denies that Plaintiff was promised a raise, but the Court finds a factual dispute on this issue. Plaintiff claims that on February 4, 2004, he received a promotion and a promise of a ten percent salary increase. Doc. #101, Exh. A, Foraker Aff. On May 26, 2004, one day following his return from medical leave, Plaintiff discovered that his title, job responsibilities, and raise had been revoked. Doc. #100. Plaintiff states that he "immediately approached supervisor Bill Pepicello on May 26, 2004 . . . for an explanation as to the reason he did not receive his promotion or his salary increase." *Id.* He was told that the promotion was an "administrative error." Doc. #62, Exh. 2 at 210.

- 9 -

1  fails because Plaintiff has not produced any evidence that Defendant knew of the EEOC
2  complaint. The Court agrees.

3  To show a causal link between the activity protected by Title VII and retaliation by
4  an employer, a plaintiff must present evidence sufficient to raise an inference that his
5  protected activity was likely the reason for the adverse action. *Cohen v. Fred Meyer, Inc.,*
6  686 F.2d 793. (9th Cir. 1982). Essential to establishing the causal link is evidence that the
7  employer knew that Plaintiff had engaged in protected activity. *Id.*; *Thomas v. City of
8  Beaverton,* 379 F.3d 802 (9th Cir. 2004) (employer's awareness of employees protected
9  activity is important in establishing the causal link between that activity and the alleged
10 retaliatory action).

11 In this case, the EEOC summarily dismissed Plaintiff's charge of discrimination.
12 Plaintiff has produced no evidence that Defendant knew of the charge, either through notice
13 from the EEOC or word from Plaintiff himself. Indeed, Plaintiff admitted in his deposition
14 that "I didn't mention [the EEOC filing] to anyone . . . at the University . . . [or] at work.
15 [The EEOC filing] was very private and confidential to me. . . . Did I tell my boss, [Dr.
16 Pepicello]? I don't recall telling anyone at work." Doc. #62, Exh. 2 at 198. Because
17 Plaintiff has produced no evidence that Defendant knew of the EEOC charge, he cannot
18 establish the causal link necessary for his Title VII claim and the Court will grant
19 Defendant's motion for summary judgment. Summary judgment is appropriate against a
20 party who "fails to make a showing sufficient to establish the existence of an element
21 essential to that party's case, and on which that party will bear the burden of proof at trial."
22 *Celotex*, 477 U.S. at 322.

23 **III. Summary.**

24 The Court will grant summary judgment on all of Plaintiff's FMLA claims except the
25 loss of his title, management responsibilities, and raise. The Court will also grant summary
26 judgment on Plaintiff's Title VII claims. Summary judgment on the Title VII claims includes
27 not only the retaliation claim discussed above, but also the sex and religious discrimination
28

claims alleged in Plaintiff's Fourth Amended Complaint – claims that Plaintiff no longer is pursuing. *See* Doc. #94 at 3.

### IV.  Motion to Strike.

Because the Court did not rely on the exhibits Defendant seeks to strike, the Court will deny Defendant's motions to strike as moot.

**IT IS ORDERED**:

1. Defendant's Motion for Summary Judgment (Doc. #62) is **granted in part** and **denied in part** as set forth above.
2. Defendant's Motions to Strike (Docs. #117, 138) are **denied** as moot.
3. Defendant's Motion for Summary Judgment on Plaintiff's Fourth Amended Complaint (Doc. #121) is **granted.**
4. The Court will schedule a final pretrial conference by separate order.

DATED this 12th day of April, 2006.

David G. Campbell
United States District Judge

- 11 -