**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wayne F. Foraker,<br><br>   Plaintiff,<br><br>vs.<br><br>Apollo Group, Inc. dba University of Phoenix,<br><br>   Defendant. | No. CV-04-2614-PHX-DGC<br><br>**ORDER** |

On September 1, 2006, the jury in this case unanimously concluded that Plaintiff had been denied a promotion and a 10% pay increase for taking his 2004 leave under the Family Medical Leave Act ("FMLA"). Dkt. #223. The jury also concluded that Plaintiff was placed on paid administrative leave for requesting additional FMLA leave in 2005. *Id.* With respect to both of these actions, the jury found that Defendant acted in bad faith. *Id.*

When a violation of the FMLA has been established, the statute expressly authorizes injunctive relief. Employers who violate the statute are liable for economic damages or "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B).

Plaintiff seeks equitable relief. Dkt. #257. In light of the jury's verdict and the availability of such relief under the FMLA, the Court entered an order on December 21, 2006, requiring that Defendant "end Plaintiff's paid administrative leave and . . . return him to full-time employment, either (at Defendant's election) in the position he previously held (Senior Director of Learning Assessment) or an 'equivalent' position within the meaning of 29 U.S.C. § 2614(a)(1)(B)." Dkt. #261.

Defendant responded by offering Plaintiff two positions: Senior Director of Academic Quality and Assurance at Western International University ("WIU") and Senior Director of Academic Quality and Assurance at the Institute for Professional Development ("IPD"). Plaintiff declined to accept these positions, concluding that they are not "equivalent" to the position he was promised by Defendant.

The parties have filed briefs and exhibits (Dkt. ##284, 286), and the Court held an evidentiary hearing on March 7, 2007, receiving testimony from four witnesses and hearing arguments from counsel. The Court concludes that the positions offered by Defendant are not equivalent within the meaning of the FMLA or the Court's prior order.

**1.     Plaintiff's Promised Position.**

The University of Phoenix is a wholly owned subsidiary of Defendant Apollo Group, Inc. Plaintiff has been employed in various positions at the University for approximately 13 years. The jury found that Plaintiff was given the position of Senior Director of Learning Assessment for the University in early 2004.

The University of Phoenix has approximately 300,000 students. As the Senior Director of Learning Assessment, Plaintiff was to oversee learning assessment programs for the entire University, covering the four schools and seven colleges within the University. Although Plaintiff's position was new, the learning assessment function was not. Plaintiff was assuming responsibilities previously held by Dean Liz Tice, who had left the University. Plaintiff's responsibilities included preparing a budget for the learning assessment department, managing the cost center for the department, staffing the department, and supervising the employees who would be associated with the department. Dkt. #238 at 114. Plaintiff was to work with the Information Technology Director to establish a technology platform from which to conduct the assessment work. *Id.* At the outset, Plaintiff supervised one employee, Debbie Reimer. *Id.* at 139. It was anticipated that he would hire additional employees for the department.

/ / /

**2. The Offered Positions at WIU and IPD.**

WIU has approximately 4,500 students. Like the University of Phoenix, it is a wholly owned subsidiary of Defendant Apollo Group, Inc. The position of Senior Director of Academic Quality and Assurance at WIU was created for Plaintiff in response to the Court's order. Unlike Plaintiff's promised position at the University, this new position would not include responsibilities already existing or previously held by other employees. Rather, Plaintiff primarily would be responsible for preparing for an outside assessment of WIU in 2008 and for researching best practices. Plaintiff would supervise no employees, have no budget, and be responsible for no cost center. Although Defendant made clear that Plaintiff could eventually develop a cost center of up to $500,000 and hire employees if needed, the testimony of his direct supervisor, Deborah Desimone, made clear that the future of Plaintiff's position and department is uncertain.

IPD is not a college. Like the University of Phoenix, it is a wholly owned subsidiary of Apollo Group. IPD engages in consulting activities with 21 privately owned colleges around the country. The position of Senior Director of Academic Quality and Assurance at IPD was created for Plaintiff in response to the Court's order. John Lopez would be Plaintiff's supervisor in this position. Mr. Lopez characterized his office as "a small company, small staff." Mr. Lopez testified that Plaintiff would be asked to perform lag time analysis, research historical trends, and research retention data for the clients of IPD. Initially, he would supervise no employees, have no budget, and be responsible for no cost center. Although these facets of his job could grow, as they could at WIU, the growth of Plaintiff's department and the nature and extent of its work are unknown at this time. Plaintiff testified that the kind of analysis Mr. Lopez would ask him to do, such as lag time analysis, was done by subordinates in his previous positions at the University.

**3. The Offered Positions Are Not Equivalent.**

The FMLA entitles Plaintiff "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C.

§ 2614(a)(1)(B). Congress has authorized the Department of Labor to issue regulations implementing these terms. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir. 2003) (citing 29 U.S.C. § 2654). The regulations are entitled to deference. *Id.* They define an "equivalent position" in these words:

> An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.

29 C.F.R. § 825.215(a). The regulations also provide that "[a]n equivalent position must have substantially similar duties, conditions, responsibilities, privileges, and status as the employee's original position." 29 C.F.R. § 825.215(e).

The Court concludes that the two positions offered by Defendant do not have responsibilities, authority, privileges, and status substantially similar to the position of Senior Director of Learning Assessment at the University. Although the offered positions have the same salary, benefit, and job classification, the Court cannot conclude that responsibility for learning assessment across four schools and seven colleges, spanning 300,000 students, is substantially the same as conducting research within IPD or preparing for an assessment of the 4,500-student WIU. The latter jobs do not have the same level of responsibility, authority, status, and privileges as the position the jury found to have been promised Plaintiff and denied him in bad faith. The Court accordingly concludes that Defendant has not offered Plaintiff positions equivalent to the promotion wrongfully denied him under the FMLA.

The Court has reviewed cases cited by the parties and identified through the Court's own research. The Court concludes that this case is most similar to *Donahoo v. Master Data Center*, 282 F.Supp.2d 540 (E.D. Mich. 2003). The plaintiff in *Donahoo* worked as a computer analyst prior to taking leave under the FMLA. Upon returning to work, the plaintiff was assigned a data-entry position. The district court held that the positions were not equivalent:

> Defendant argues that plaintiff's new position carried equal pay and benefits to her former position and therefore the two are equivalent. While that may be true, the regulation also requires equivalent status, and the two positions were not equivalent in terms of status: a data-entry job is not as sophisticated, nor does it require a similar level of training and education, as a computer analyst.

*Id.* at 552.

Other courts have found that plaintiffs were offered equivalent positions even though the new positions differed from their previous jobs. In each case the court found that the differences were *de minimis*. *See, e.g., Smith v. East Baton Rouge Parish School Board*, 453 F.3d 650, 652 (5th Cir. 2006) (reduction in travel a *de minimis* difference); *Montgomery v. Maryland*, 266 F.3d 334, 341-42 (4th Cir. 2001) (vacated on other grounds by *Montgomery v. Maryland*, 535 U.S. 1075 (2002)) (changes in administrative duties *de minimis*); *Oby v. Baton Rouge Marriott*, 329 F.Supp.2d 772, 779-82 (N.D. La. 2004) (no evidence that change in supervisory responsibilities was significant); *Hillstrom v. Best Western TLC Hotel*, 265 F.Supp.2d 117, 126-27 (D. Mass. 2003) (loss of private office and change of reporting line *de minimis*). The Court has considered these cases carefully and cannot conclude that the *de minimis* characterization applies to the differences between Plaintiff's promised position and the jobs offered at WIU and IPD. Directing learning assessment for the entire 300,000-student University of Phoenix is more than minimally different from conducting research at IPD or preparing for an assessment of the 4,500-student WIU.

Because the Court is exceedingly reluctant to venture into the business of prescribing jobs within a company, it will give Defendant one more opportunity to provide Plaintiff with an equivalent position. On or before **April 6, 2007**, Defendant shall either offer to Plaintiff the position of Senior Director of Learning Assessment he was previously promised, or shall offer him an equivalent position within the University of Phoenix. The equivalent position must not only include the same pay, benefits, and job classification, but must also be substantially similar in responsibilities, authority, status, and privileges. Plaintiff shall have until **April 20, 2007** to accept the new position. If Plaintiff does not accept the new position by that date, the parties shall jointly notify the court on **April 23, 2007**, that the position has

not been accepted. The Court will then schedule a hearing to finally resolve the matter.

A few words of guidance: The Court recognizes that the new position need not be identical to the promotion Plaintiff was denied in order to be equivalent. As this order should make clear, however, offering Plaintiff a position in a much smaller institution with much less substantial responsibilities will not be found by the Court to satisfy the equivalency requirement. Plaintiff should also recognize, however, that the Court will not be inclined to require Defendant to re-create the now-abolished position of Senior Director of Learning Assessment if a substantially similar position has been offered to Plaintiff within the University of Phoenix.

DATED this 12th day of March, 2007.

_David G. Campbell_
David G. Campbell
United States District Judge