**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wayne F. Foraker,<br><br>  Plaintiff,<br><br>vs.<br><br>Apollo Group, Inc. dba University of Phoenix,<br><br>  Defendant. | No. CV- 04-2614-PHX-DGC<br><br>**ORDER** |

On March 12, 2007, the Court concluded that two employment positions offered by Defendant to Plaintiff were not "equivalent" within the meaning of the Family Medical Leave Act ("FMLA"). Dkt. #298. Defendant had offered Plaintiff the positions in response to the jury's verdict in this case and the Court's requirement that Defendant restore Plaintiff to an equivalent position. Dkt. #261. The Court afforded Defendant a final opportunity to offer Plaintiff an equivalent position before intervening and specifying the position Plaintiff must receive. Dkt. 298. Defendant subsequently offered Plaintiff a third position, but Plaintiff again claims the position is not equivalent. Based on evidence presented at a recent hearing, the Court finds that Defendant has offered Plaintiff an equivalent position within the meaning of the FMLA. The Court will give Plaintiff a limited amount of time within which to either accept or reject the new position.

**I.   Background.**

On September 1, 2006, the jury in this case unanimously concluded that Plaintiff had been denied a promotion and a 10% pay increase for taking his 2004 leave under the FMLA. Dkt. #223. The jury also concluded that Plaintiff was placed on paid administrative leave

1  for requesting additional FMLA leave in 2005. With respect to both of these actions, the jury
2  found that Defendant acted in bad faith. *Id.*

3  Employers who violate the FMLA are liable for economic damages and "for such
4  equitable relief as may be appropriate, including employment, reinstatement, and promotion."
5  29 U.S.C. § 2617(a)(1)(B). The Court accordingly entered an order on December 21, 2006,
6  requiring that Defendant "end Plaintiff's paid administrative leave and . . . return him to full-
7  time employment, either (at Defendant's election) in the position he previously held (Senior
8  Director of Learning Assessment) or an 'equivalent' position within the meaning of 29
9  U.S.C. § 2614(a)(1)(B)." Dkt. #261.

10  Defendant responded by offering Plaintiff two positions: Senior Director of Academic
11  Quality and Assurance at Western International University and Senior Director of Academic
12  Quality and Assurance at the Institute for Professional Development. Plaintiff declined both
13  positions, concluding they were not equivalent to his previous position of Senior Director of
14  Learning Assessment. Following an evidentiary hearing on March 7, 2007, the Court agreed.
15  Dkt. #298.

16  On April 6, 2007, Defendant offered Plaintiff the position of Senior Director of
17  Institutional Assessment at the University of Phoenix. On April 20, 2007, Plaintiff rejected
18  the position. The Court held an evidentiary hearing on May 23, 2007. Several witnesses
19  testified and counsel submitted exhibits and made oral arguments. The discussion that
20  follows reflects the Court's findings of fact based on evidence presented at the hearing.

21  **II.    Plaintiff's Original Promised Position.**

22  The jury found that Plaintiff was given the position of Senior Director of Learning
23  Assessment for the University of Phoenix in early 2004. In this position, Plaintiff was to
24  oversee learning assessment programs for the University. Plaintiff's position was new, but
25  the learning assessment function was not. Plaintiff was to assume responsibilities previously
26  held by a Dean who had left the University. Plaintiff's responsibilities included preparing
27  a budget for the learning assessment department, managing the cost center for the

28

- 2 -

1  department, and staffing the department.  Dkt. #238 at 114.  Plaintiff supervised one
2  employee, Debbie Reimer. *Id*. at 139.  It was anticipated that Plaintiff would hire additional
3  employees for the department.  Plaintiff would have a pay grade of seven and would report
4  to the Vice Provost for Regulatory Affairs.  Because Plaintiff's position was new, he was
5  charged with developing and growing the department that would undertake learning
6  assessment for the University.

**III.    The Position Offered by Defendant.**

The working title of the position recently offered by Defendant is Senior Director of Institutional Assessment.  The position classification, which differs from the working title, is Director, Institutional Research and Effectiveness.  The holder of this position will report directly to the Provost of the University of Phoenix, Adam Honea.  Like Plaintiff's previous position, this position is new.  It has been created in response to recent developments at the United States Department of Education.  The Department has issued the Spellings Report, a document that sets forth a policy calling for greater accountability among institutes of higher learning in the United States.  Mr. Honea testified that this new policy will require universities, including the University of Phoenix, to conduct more rigorous assessment of the educations they provide, including student success rates, affordability, and whether students are acquiring useable skills – whether they actually learn what the universities purport to teach.  The position of Senior Director of Institutional Assessment has been created to assist the University of Phoenix in complying with the Department's new policies.  Unlike the previous two positions offered by Defendant, this position has not been created solely for Plaintiff.  If Plaintiff declines the position, it will be filled by another qualified individual.

As Senior Director of Institutional Assessment, Plaintiff would have a pay grade of seven and would report to a higher level than his previous position (Provost as opposed to Vice Provost).  Plaintiff initially would supervise two employees.  He would participate in hiring a project manager for the new department and would also employ an administrative assistant.  The project manager to be supervised by Plaintiff would be a grade six employee,

- 3 -

1  as opposed to the grade five employee supervised by Plaintiff in his previous position (Ms.
2  Reimer). In the new position, Plaintiff would be developing a budget for the department,
3  developing strategic plans for compliance with new policies reflected in the Spellings Report,
4  and implementing those plans to increase the accountability and assessments to be required
5  under the new Department of Education policy.

6  Plaintiff argued during the May 23 hearing that the new position differs in significant
7  respects from his previous position. The Court will address Plaintiff's primary arguments.

8  First, Plaintiff argued that the position classification for the new job – Director,
9  Institutional Research & Effectiveness – is lower than his previous position classification of
10 Senior Director. Tracy Bonjean, the University's Vice President for Employee Services,
11 testified that the University eliminated the position classification of Senior Director
12 approximately two years ago. Thus, even if Plaintiff had not been on administrative leave,
13 his position classification would have been changed from Senior Director to Director. This
14 change within the University would not have produced a reduction in pay or responsibilities.
15 Ms. Bonjean testified that there currently are no position classifications of Senior Director
16 at the University.[1]

---

[1] Plaintiff asserted that he recently refinanced his home. In response to an inquiry from his lender, Plaintiff claims that the University of Phoenix reported that Plaintiff was a Senior Director. Ms. Bonjean testified, credibly, that the University typically would respond to such an inquiry by giving the employee's working title (Plaintiff's last working title was Senior Director of Learning Assessment). She further testified that nothing in Plaintiff's file would have changed since he was placed on paid administrative leave. Thus, information in his file used to respond to the lender's inquiry would have reflected information from the date Plaintiff commenced his administrative leave. For these reasons, the Court does not find that information recently provided to Plaintiff's lender contradicts Ms. Bonjean's testimony that the position classification of Senior Director has been eliminated at the University of Phoenix.

- 4 -

Second, Plaintiff complained that he will be eligible in the new position for an annual bonus of only $2,000, whereas he previously received annual bonuses of $10,000. As Defendant noted, however, Plaintiff's bonuses of $10,000 were received not in the position he held immediately prior to being placed on paid administrative leave, but in an earlier position. Plaintiff has not provided the Court with credible evidence that he was entitled to a $10,000 annual bonus in the position he held immediately before being placed on paid administrative leave.

Third, Plaintiff complained that the job description for the new position contains only six numbered paragraphs, whereas the job description for his previous position contained ten numbered paragraphs. The Court finds, however, that the importance of a job at the University of Phoenix cannot be determined by the number of paragraphs in the job description. As Mr. Honea credibly testified, more senior positions have less detail in their job description because managers are given greater discretion. Mr. Honea is aware of only three specific responsibilities for his position as Povost.

Fourth, Plaintiff argued that he previously was responsible for supervising managers, whereas the new position will simply supervise employees. The Court does not agree. Plaintiff's previous position called for him to supervise one employee – Debbie Reimer, a grade five employee. The new position calls for him to hire and supervise a grade six employee whose title will be Academic Affairs Project Director and a grade three Administrative Assistant. Thus, Plaintiff would supervise more employees in the new position than in the former. Although it was true that Plaintiff's former position could result in the hiring and staffing of a department and therefore in the supervision of additional employees, the same is true for the new position. Mr. Honea testified that the department will be an important function at the University given new policies within the Department of Education, will be necessary regardless of whether the Department issues specific regulations, and will require strategic planning and growth so that the University can comply with the assessment and reporting requirements of the future.

Fifth, Plaintiff complained that he will not have the same perquisites in the new position as he did in the former position. Plaintiff mentioned a cell phone, credit card, subscription to the Wall Street Journal, and similar perks. Defendant's evidence demonstrated, however, that the new position will be entitled to the same perks as any other grade seven employee.

**IV.   The Position Is Equivalent.**

The FMLA entitles Plaintiff "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614)(a)(1)(B). The position must be "virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a). The FMLA does not require that an employee be returned to the same position the employee held before taking FMLA leave. Nor does the FMLA prohibit de minimus or intangible differences in job responsibilities. *Smith v. East Baton Rouge Parrish School Board*, 453 F.3d 650, 651 (5th Cir. 2006). Moreover, the FMLA does not entitle the employee to any rights, benefits, or positions he would not have been entitled to had he not taken leave. 29 U.S.C. § 2614(a)(3)(B).

The Court concludes that the new position offered by Defendant is equivalent within the meaning of the FMLA. Plaintiff will have the same pay grade and working title (Senior Director) as he held in his previous position. Plaintiff will report to a higher level of management within the University than in his previous position. Plaintiff initially will supervise more employees, and higher level employees, than in his previous position. Plaintiff will be responsible for strategic planning and assessment, a position similar to the assessment responsibilities of his prior position. Plaintiff will receive all of the perquisites of a grade seven employee. Plaintiff's new position offers growth opportunities, as did his previous position. Although Plaintiff's position classification will be Director rather than

- 6 -

1  Senior Director, the Court concludes that this is not a significant difference.  Ms. Bonjean
2  testified that the pay and perquisites are the same.  And as explained below, Plaintiff's
3  FMLA claim was based on his pay and job responsibilities, not his position classification.
4        Other courts have found that plaintiffs were offered equivalent positions even though
5  the new positions differed in some respects from their previous jobs.  *See, e.g., Smith*, 453
6  F.3d at 652 (reduction in travel); *Montgomery v. Maryland*, 266 F.3d 334, 341-42 (4th Cir.
7  2001) (vacated on other grounds by *Montgomery v. Maryland*, 535 U.S. 1075 (2002))
8  (changes in administrative duties); *Oby v. Baton Rouge Marriott*, 329 F.Supp.2d 772, 779-82
9  (N.D. La. 2004) (changes in supervisory responsibilities); *Hillstrom v. Best Western TLC*
10 *Hotel*, 265 F.Supp.2d 117, 126-27 (D. Mass. 2003) (loss of private office and change of
11 reporting line).  The Court reaches the same conclusion with respect to the new position
12 offered by Defendant.  The position of Senior Director of Institutional Assessment includes
13 the same pay and working title and substantially similar duties and responsibilities, entailing
14 substantially equivalent skill, effort, responsibility, and authority.  The FMLA entitles
15 Plaintiff to an equivalent position, not a position of his choice.  The Court finds that the
16 position offered by Defendant is sufficiently equivalent.
17       Plaintiff therefore will be given until **5:00 p.m. on Monday, June 4, 2007** to accept
18 the position of Senior Director of Institutional Assessment.  If defense counsel has not
19 received a written acceptance by that time, the Court will not require Defendant to transfer
20 Plaintiff into the position of Senior Director of Institutional Assessment or any other position.
21 Because the offer of this position constitutes Plaintiff's equitable remedy under the FMLA
22 for Defendant's having wrongfully placed him on paid administrative leave, Plaintiff will not
23 be entitled to another position, or to a continuation of his paid administrative leave, if he
24 elects to reject this equitable relief.
25 **V.    Other Matters.**
26       On May 24, 2007, Plaintiff filed an Application for Order to Show Cause to Hold
27 Adam Honea and Tracy Bonjean [In Contempt] and to Hold New Hearing.  Dkt. #306.
28

1  Today, Plaintiff filed an amended version of the Application. Dkt. #310.

2  Plaintiff's Application and Amended Application argue that Mr. Honea testified
3  falsely when he stated at the May 23 hearing that Leslie Bliss, the Director of Learning
4  Assessment at the University of Phoenix, was now an academic affairs project director.
5  Plaintiff asserts that he placed a telephone call to Ms. Bliss' office following the hearing and
6  that her voice mail message stated that she is Director of Learning Assessment. Plaintiff asks
7  the Court to hold another hearing, subpoena Ms. Bliss and her employment file, and hold Mr.
8  Honea in contempt for providing false testimony.

9  The Court will decline Plaintiff's request. Mr. Honea's testimony regarding Ms. Bliss
10 was not presented by Defendant during Mr. Honea's direct or re-direct examination, nor
11 asserted by Defendant as a basis for concluding that the new position is equivalent. The
12 testimony regarding Ms. Bliss was elicited by Plaintiff's counsel during cross-examination.
13 Plaintiff's Application and Amended Application assert that Plaintiff had no reason to
14 believe the testimony about Ms. Bliss would be provided at the hearing, and yet it was
15 Plaintiff who elicited the testimony. If Plaintiff regarded testimony about Ms. Bliss to be
16 sufficiently important to ask for it even when Defendant had not raised the issue, Plaintiff
17 certainly could have subpoenaed Ms. Bliss or her employment records for the hearing.

18 Moreover, the Court finds no material reason to believe that Mr. Honea provided
19 deliberately false testimony. Mr. Honea testified that Ms. Bliss works in a department other
20 than his, suggesting that he might not be fully familiar with her work. What is more, David
21 Bickford, who was Ms. Bliss' immediate supervisor, testified during trial on August 31,
22 2006, that Ms. Bliss held the position classification of academic affairs project director – the
23 same description provided by Mr. Honea – and the working title of Director of Learning
24 Assessment. Dkt. #241 at 21, 25. This testimony reconciles Mr. Honea's testimony and
25 Plaintiff's subsequent phone call to Ms. Bliss' office. The Court finds no material reason to
26 conclude that Mr. Honea testified falsely.

27 Most importantly, the Court's decision is not based on the position held by Ms. Bliss.

28

- 8 -

1  This order is based on the fact that the new position offered to Plaintiff is equivalent to his
2  former position within the meaning of the FMLA. The Court's decision would not be altered
3  by the fact that Ms. Bliss is still the Director of Learning Assessment. The FMLA does not
4  entitled Plaintiff to a position of his choice – in this case, Ms. Bliss' position (Dkt. #308).
5  It entitles him to an equivalent position, and vests discretion in the employer to decide what
6  position that should be, so long as it is equivalent.

7  The Application and Amended Application also argue that Ms. Bonjean provided false
8  testimony at the May 23 hearing when she testified that the position classification of Senior
9  Director has been abolished. Ms. Bonjean explained that Plaintiff's position classification
10 in the newly offered position would be Director, but that Plaintiff's working title would
11 continue to be Senior Director. She testified, and Plaintiff did not dispute, that Plaintiff
12 would remain at the same pay grade as his previous position.

13 Plaintiff asserts that Ms. Bonjean's testimony concerning the abolishment of the
14 Senior Director position classification was false. He asserts that his external review of
15 Defendant's system shows that the position of Senior System Administrator still exists within
16 the University of Phoenix, implying that the position classification of Senior Director must
17 also exist. Plaintiff asks the Court to give him access to internal job postings at the
18 University so he can confirm his suspicion.

19 Plaintiff's request will be denied. Plaintiff's position classification has never been the
20 issue in this case. The Court made this point clearly in a prior order where it accepted
21 Plaintiff's arguments regarding the nature of his promotion:

> Plaintiff readily admitted during his testimony at trial that he received no change in his position classification. Plaintiff instead asserted that he received new job responsibilities, including management and budgetary responsibilities for the area of learning assessment within Defendant's business. Plaintiff also asserted that he was promised a 10% pay raise in connection with these new job responsibilities. Plaintiff asserts that these increases in job duties and pay constituted a promotion within the ordinary meaning of the word.
>
> The Court concludes that the jury reasonably found that the change in Plaintiff's employment responsibilities constituted a promotion. The Court

- 9 -

does not equate this finding with a change in Plaintiff's position classification. Indeed, as noted above, Plaintiff did not assert at trial that he received an increased position classification. But the jury reasonably concluded that Plaintiff was given increased management and budgetary responsibilities and a corresponding pay increase, and that these increases were subsequently withdrawn when Plaintiff's took FMLA leave in 2004.

Dkt. #255 at 2.

As this explanation makes clear, Plaintiff's pay and job responsibilities, not his position classification, were denied in violation of the FMLA. To restore him to an equivalent position, therefore, Defendant must offer him equivalent pay and job responsibilities. Defendant has done so. Plaintiff remains a grade seven employee, retains the working title of Senior Director, and has been offered equivalent job responsibilities and opportunities. The fact that his position classification has been changed to Director does not constitute a sufficiently significant change to preclude a finding of equivalency under the FMLA. The Court will not reopen discovery or convene another hearing to address Ms. Bonjean's testimony.

**IT IS ORDERED:**

1. Plaintiff shall have until **5:00 p.m. on Monday, June 4, 2007** to accept Defendant's offered position of Senior Director of Institutional Assessment. If defense counsel has not received Plaintiff's written acceptance by that time, Defendant will not be required to transfer Plaintiff into the position of Senior Director of Institutional Assessment or any other position, and may terminate Plaintiff's paid administrative leave.

2. Plaintiff's Application for Order to Show Cause to Hold Adam Honea and Tracy Bonjean [In Contempt] and to Hold New Hearing (Dkt. #306) is **denied**.

3. Plaintiff's Amended Application for Order to Show Cause to Hold Adam Honea and Tracy Bonjean [In Contempt] and to Hold New Hearing (Dkt. #310) is **denied**.

4. Plaintiff's Motion for Expedited Determination (Dkt. #308) is **granted**. The Court has given Plaintiff's Application and Amended Application expedited consideration.

5. Plaintiff's supplemental application for attorneys' fees shall be filed on or

1  before **June 13, 2007**.  Defendant's response shall be filed on or before **June 22, 2007**.
2  Plaintiff's  reply shall be filed on or before **June 29, 2007.**
3  DATED this 25th day of May, 2007.

_____
David G. Campbell
United States District Judge